IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs April 2, 2020

## IN RE CONSERVATORSHIP OF JOHN MARTIN MULDOON

**Appeal from the Probate Court for Cumberland County**
**No. 2018-PF-6184   Larry Michael Warner, Judge**

_____

**No. E2019-01621-COA-R3-CV**

_____

This appeal arises from a petition to appoint a conservator under Tennessee Code Annotated section 34-1-121. The petitioner/wife was originally appointed as conservator of respondent/husband in October 2018. Thereafter, the parties could not agree on an appropriate Statement of Evidence. The trial court ordered a new hearing so a court reporter could be present to provide a Transcript of Evidence. The respondent filed an appeal to this Court, which was dismissed for lack of appellate jurisdiction due to the non-final order. A new hearing took place in July 2019. The trial court found petitioner met her burden under Tennessee Code Annotated sections 34-1-101(7) and 34-1-126 and appointed the petitioner as conservator over the respondent's person and property. The respondent appealed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Probate Court Affirmed and Remanded.**

CARMA DENNIS MCGEE, J., delivered the opinion of the court, in which D. MICHAEL SWINEY, C.J., and FRANK G. CLEMENT JR., P.J., M.S., joined.

Jonathan Roy Hamby, Crossville, Tennessee, for the appellant, John Martin Muldoon.

Jeffrey A. Vires, Crossville, Tennessee, for the appellee, Catherine Sanders Muldoon.

**MEMORANDUM OPINION[1]**

_____

[1] Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum

# I. FACTS & PROCEDURAL HISTORY

Catherine Sanders Muldoon ("Petitioner") and John Martin Muldoon ("Respondent") have been married for over 37 years and reside in Cumberland County, Tennessee. In 2016, Respondent suffered a severe stroke that left him paralyzed on the entire left side of his body.

On April 9, 2018, Petitioner filed a petition for emergency relief to become Respondent's temporary conservator. In her emergency petition, Petitioner stated Respondent's stroke rendered him unable to care for himself, his property, or make healthcare decisions. Petitioner presented with her petition two signed letters from practicing physicians and one sworn physician's report which purported to comply with the requirements of Tennessee Code Annotated section 34-3-105(c). The doctors' statements indicated that Respondent's stroke[2] caused him to suffer cognitive impairment, or vascular dementia.[3]

On April 9, 2018, the probate court granted the petition and appointed Petitioner as the temporary conservator over Respondent's person and property, subject to a final hearing on the need for a conservator. Prior to the final hearing, the court appointed a guardian ad litem (William T. Ridley) and an attorney ad litem (Cynthia Fields Davis) for Respondent.[4] Mr. Ridley met with Respondent and concluded that he understood the nature of the petition and his rights. Respondent further expressed that he agreed that he needed a conservator, but stated he did not want Petitioner to be appointed as such due to fears that she would steal his money. Despite Respondent's contentions, Mr. Ridley concluded that Respondent required a conservator and that it was in his best interest for Petitioner to serve as such.

Independent medical examinations of Respondent were conducted by Dr. Dwight Willett and Dr. Elizabeth Petty. In his report, Dr. Willett listed "loss of executive function" and "mild dementia" among Respondent's disabilities. Dr. Willett also stated Respondent was "[u]nable to take care of himself, either financially, physically, or

---

opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

[2] A "stroke" is defined as "any neurologic deficit caused by disease of or damage to the blood vessels in the brain which lasts for more than 24 hours." *1 Attorneys Medical Advisor* § 16:11. Generally, "the damage caused by a stroke is the result of interruption of blood supply to a portion of the brain." *Id.* The term "cerebrovascular accident" is used interchangeably with "stroke." *Id.*

[3] Vascular dementia is defined as "a progressive cognitive dysfunction caused by stroke." Nikolaos Scarmeas, *Vascular Dementias, in Merrit's Neurology* 432, 432 (Elan D. Louis et al. eds., 13th ed. 2015).

[4] With the court's permission, attorney Kevin Poore was substituted as Respondent's counsel on November 26, 2018.

nutritionally." Dr. Willet also opined that Respondent "believes he can care for himself, but he can't." Dr. Petty's report stated that Respondent should have a conservator appointed, that he needed 24-hour supervision, and that "[h]e has poor insight into the nature of his disability and what his needs are." Dr. Petty recommended that Respondent be appointed a conservator for all of his financial affairs and healthcare decisions. A hearing on the petition was held on October 22, 2018, and the trial court entered an order appointing Petitioner as conservator. In response, Respondent filed a notice of appeal.

In preparing the appellate record, the parties disagreed over the appropriate Statement of the Evidence. On February 16, 2019, the probate court heard arguments to determine the Statement of Evidence. The trial judge stated he did not have a personal recollection of the case and therefore could not rule upon an appropriate Statement of the Evidence. Over Petitioner's objection, the court ordered that a new hearing would be held with a court reporter present. This Court then dismissed Respondent's pending appeal for lack of appellate jurisdiction due to the trial court's order not being final. *See In re Conservatorship Muldoon*, No. E2018-02116-COA-R3-CV, 2019 WL 2402938 (Tenn. Ct. App. June 6, 2019).

The new hearing took place on July 31, 2019. Prior to the hearing, an additional medical examination report by Dr. Petty was submitted to the probate court. Dr. Petty's report restated her earlier conclusions. Both parties testified at the hearing, in addition to Respondent's former caretaker, Lorie Jewel. Petitioner testified as to Respondent's stroke, his subsequent disabilities, her attempts to care for him at home, Respondent's increase in erratic behavior, and her inability to retain caregivers at their home. Petitioner testified that there were at least twelve at-home caregivers at various times over a seven and one-half month period. She stated that Respondent's perception of reality was negatively affected by his stroke, that he became paranoid and irrational, and that she began worrying for her safety after Respondent made several physical threats towards her. Even with her aid, Petitioner stated that Respondent "has to have a tremendous amount of help in order to do anything." She testified that Respondent had fallen several times at home, requiring EMS or the fire department to be called to his aid. Eventually, Petitioner became unable to care for Respondent at their home, so Respondent was moved into a senior care facility. Throughout her testimony, Petitioner expressed concerns regarding Respondent's ongoing paranoia and lack of connection with reality. She described one occasion where Respondent was "covered in blood" as he was "profuse[ly] bleeding," but Respondent refused to go to the hospital. Despite the past troubles, Petitioner is satisfied with the current facility where Respondent resides. She believes "[h]e is stable" and "well taken care of."

Ms. Jewel, a Certified Nursing Assistant, testified to her prior experiences caring for Respondent. She stated Respondent needed help with "pretty much everything . . . from the moment he woke up until the moment he went to bed." She also testified that he was physically and mentally unable to care for himself and refused to follow the

- 3 -

directions of doctors. Even when Respondent was being cared for in his home, Ms. Jewel stated he would refuse to take his medications. Ms. Jewel corroborated Petitioner's testimony regarding Respondent's paranoia and aggression. Ms. Jewel described instances where knives and guns were removed from Respondent's possession.

In response to Petitioner and Ms. Jewel, Respondent testified on his own behalf. Initially, Respondent asserted that he did not want a conservator and believed he could cure his physical disabilities with certain exercises. Later in his testimony, Respondent admitted that he needed assistance but wanted to live in and be cared for at his home. Respondent's main concern regarding the care facility was its high financial cost. He stated that if he was appointed a conservator, he did not want it to be Petitioner because "her ideas don't agree with mine." Respondent also requested to be able to make his own purchases and medical decisions.

In its oral ruling, the probate court stated that the proof was "overwhelming" and found the appointment of a conservator to be necessary. The court appointed Petitioner as the conservator, stating that she is given priority as Respondent's wife; that she has taken the necessary steps to care for and protect him; that she tried to retain quality caregivers for their home; and that a public conservator would not be cost-effective. On August 8, 2019, the probate court entered a written order appointing Petitioner as conservator over Respondent's person and property. The court stated Petitioner's powers as conservator included, but were not limited to, those listed in Tennessee Code Annotated section 34-3-107(a)(2)(A)–(P).

With the court's permission, Mr. Poore filed a motion to withdraw as counsel, which the court granted. On September 6, 2019, the court appointed Jonathan R. Hamby as Respondent's new attorney ad litem.[5] Respondent timely appealed.[6]

## II.   ISSUE PRESENTED

Respondent presents one issue for review on appeal:

1. Whether the trial court erred in appointing a conservator for the Respondent, John Martin Muldoon.

---

[5] Attorney Kevin R. Bryant was appointed prior to Mr. Hamby, but Mr. Bryant withdrew shortly thereafter due to a conflict in the case.

[6] Respondent's notice of appeal indicates it was filed on September 10, 2019. Under Tennessee Rules of Appellate Procedure 4, 20(a), and 21(a), Respondent had until September 9, 2019, to file a timely notice of appeal. This Court issued a show cause order to determine if Respondent's appeal was timely. In response, Respondent explained that he mailed the notice of appeal with a commercial delivery service on September 9, 2019, making it timely under Tennessee Rule of Appellate Procedure Rule 20(a). We agree.

At the very end of Respondent's brief, he eludes to other points of contention. Therein, he takes issue with the trial court not considering whether partial supervision was appropriate and the Court not expressly stating whether Petitioner's supervision would be "full-time" or "part-time." Respondent does not cite any authority to support these contentions and presents only a "skeletal argument." As a result, we deem these issues waived. As our Supreme Court has stated:

> It is not the role of the courts, trial or appellate, to research or construct a litigant's case or arguments for him or her, and where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived.

*Sneed v. Bd. of Prof'l Responsibility of Supreme Court*, 301 S.W.3d 603, 615 (Tenn. 2010). *See also El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones.").

For the following reasons, we affirm the trial court's decision.

### III. STANDARD OF REVIEW

In civil actions where the trial court determines the facts, factual findings are reviewed *de novo* with a presumption of correctness, unless the evidence preponderates otherwise. Tenn. R. App. P. 13(d); *In re Angela E.*, 303 S.W.3d 240, 246 (Tenn. 2010); *Bogan v. Bogan*, 60 S.W.3d 721, 727 (Tenn. 2001). Questions of law are reviewed *de novo* with no presumption of correctness. *In re Sidney J.*, 313 S.W.3d 772, 774 (Tenn. 2010); *Crye-Leike, Inc. v. Carver*, 415 S.W.3d 808, 815 (Tenn. Ct. App. 2011) (citing *Bowden v. Ward*, 27 S.W.3d 913, 916 (Tenn. 2000)).

A court's determination of a ward's best interests is reviewed under an abuse of discretion standard. *Crumley v. Perdue*, No. 01-A-01-9704-CH00168, 1997 WL 691532, at *2 (Tenn. Ct. App. Nov. 7, 1997). "An abuse of discretion occurs when a court strays beyond the applicable legal standards or when it fails to properly consider the factors customarily used to guide the particular discretionary decision." *Lee Medical Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010) (citing *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007)). Meaning, a court abuses its discretion "when it 'applie[s] an incorrect legal standard, or reache[s] a decision which is against logic or reasoning that cause[s] an injustice to the party complaining.'" *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001) (alternations in original) (quoting *State v. Shirley*, 6 S.W.3d 243, 247 (Tenn. 1999)). "The abuse of discretion standard does not permit the appellate court to substitute its judgment for that of the trial court." *Id.* (citing *Myint v. Allstate Ins. Co.*, 970 S.W.2d 920, 927 (Tenn. 1998)).

# IV. DISCUSSION

"Because of the importance of autonomy, it is well-settled that the law presumes that adult persons are sane, rather than insane, and capable, rather than incapable, to direct their personal affairs until satisfactory evidence to the contrary is presented." *In re Conservatorship of Groves*, 109 S.W.3d 317, 329–30 (Tenn. Ct. App. 2003) (footnotes omitted) ("*In re Groves*"). In order for a court to appoint a conservator over an individual's person or property, the petitioner must prove two elements: "(1) that the individual for whom the conservatorship is sought 'is fully or partially disabled,' and (2) that the individual for whom the conservatorship is sought 'is in need of assistance from the court." *In re Conservatorship of Davenport*, No. E2004-01505-COA-R3-CV, 2005 WL 3533299, at *7 (Tenn. Ct. App. Dec. 27, 2005) (citing Tenn. Code Ann. § 34-1-126). Both elements must be proven by clear and convincing evidence. Tenn. Code Ann. § 34-1-126; *In re Lawton*, 384 S.W.3d 754, 761 (Tenn. Ct. App. 2012); *In re Groves*, 109 S.W.3d at 330. Clear and convincing evidence "eliminates all serious or substantial doubt concerning the correctness of the conclusions to be drawn from the evidence. Evidence satisfying this standard will produce in the fact-finder's mind a firm belief or conviction regarding the truth of the factual propositions sought to be established by the evidence." *In re Groves*, 109 S.W.3d at 330 (citations omitted). Once a petitioner has met this burden, "the trial court is then charged with responsibility for determining whether the appointment [of a conservator] is in the respondent's best interest." *In re Lawton*, 384 S.W.3d at 761.

Tennessee Code Annotated section 34-1-101(14) defines a "person with a disability" as "any person eighteen (18) years of age or older determined by the court to be in need of partial or full supervision, protection, and assistance by reason of mental illness, physical illness or injury, developmental disability, or other mental or physical incapacity."[7] Determining whether a person has a disability is often a contested issue. Further, the fact that an individual is found to have a disability does not automatically lead to the conclusion that he or she will need a conservator. *In re Conservatorship of Perry*, No. M2018-00971-COA-R3-CV, 2020 WL 469377, at *3 (Tenn. Ct. App. Jan. 29, 2020) (citing *In re Groves*, 109 S.W.3d at 331).

In determining whether the appointment of a conservator is necessary, "the pivotal inquiry involves not merely the diagnosis [of the illness, injury, or condition] but also the effect that the illness, injury, or condition has had on the capacity of the person for whom a conservator is sought." *In re Groves*, 109 S.W.3d at 331. "A respondent's need for a conservator [may] depend[] on his or her capacity to perform necessary tasks, a capacity

---

[7] Prior to this section's amendment in 2013, the legislature used the term "disabled person" instead of "person with a disability." *See e.g.*, *In re Lawton*, 384 S.W.3d at 761; *In re Conservatorship of Tate*, No. M2010-01904-COA-R3-CV, 2011 WL 6935342, at *3 (Tenn. Ct. App. Dec. 29, 2011).

which may or may not be affected by the respondent's disability." *In re Conservatorship of Perry*, 2020 WL 469377, at \*3 (citing *In re Groves*, 109 S.W.3d at 333). Further, a person's capacity may not be static. *See Reid ex rel. Martiniano v. State*, 396 S.W.3d 478, 494–95 (Tenn. 2013); *In re Groves*, 109 S.W.3d at 333–34.

A person's capacity includes both "functional capacity" and "decision-making capacity." *Reid ex rel. Martiniano*, 396 S.W.3d at 495; *In re Conservatorship of Perry*, 2020 WL 469377, at \*3; *In re Groves*, 109 S.W.3d at 334. An extensive discussion on this topic was given in the oft-cited opinion *In re of Groves*, 109 S.W.3d 317. Functional capacity is "a person's ability to take care of oneself and one's property." *In re Groves*, 109 S.W.3d at 334. Taking care of oneself "include[s] personal hygiene, obtaining nourishment, mobility, and addressing routine healthcare needs." *Id.* When determining whether a person has functional capacity, a broad examination should be made rather than focusing on isolated incidents. *Id.* at 334–35. Caring for one's property means the person has the "ability to manage personal property, real property, and finances." *Id.* at 335. In contrast, decision-making capacity is a person's "ability to make and communicate decisions with regard to caring for oneself and one's property." *Id.* at 334. It is comprised of four central abilities: "(1) to take in and understand information, (2) to process the information in accordance with his or her own personal values and goals, (3) to make a decision based on the information, and (4) to communicate the decision." *Id.* at 335. Decision-making capacity is not lacking merely because a person makes a single unconventional or regrettable decision. *Id.* "[C]hoices that are based on deranged or delusional reasoning or irrational beliefs may signal decision-making incapacity." *Id.* at 336.

Upon analyzing the record before us, we must agree with the trial court that the proof shows that Respondent is in need of a conservator. Petitioner and Ms. Jewel each testified at length on Respondent's inability to complete essential tasks, including walking; using the restroom; eating; dressing; and bathing. Based on their testimony, it is clear that Respondent needs care "from the moment he [wakes] up until the moment he [goes] to bed." While Respondent testified that he could complete certain minor tasks on his own, including showering while sitting; brushing his teeth; and making telephone calls, the trial court appears to have placed greater weight on the testimony of Petitioner and Ms. Jewel. As an appellate court who must rely heavily on the weight and faith the trial court places on witnesses, we find no clear and convincing evidence that indicates a contrary determination should be made. *See, e.g.*, *Wells v. Tenn. Bd. of Regents*, 9 S.W.3d 779, 783 (Tenn. 1999) (stating "appellate courts will not re-evaluate a trial judge's assessment of witness credibility absent clear and convincing evidence to the contrary"); *Mach. Sales Co., Inc. v. Diamondcut Forestry Prods., LLC*, 102 S.W.3d 638, 643 (Tenn. Ct. App. 2002) (stating "[t]he weight, faith, and credit to be given to any witness's testimony lies in the first instance with the trier of fact, and the credibility accorded will be given great weight by the appellate court"). Petitioner's and Ms. Jewel's testimony indicates Respondent's inability to care for himself is constant,

regardless of whether he is at home or in a care facility. It is clear that Respondent lacks the functional capacity necessary to care for himself. *See In re Groves*, 109 S.W.3d at 334–35.

There was also ample testimony on Respondent's lack of decision-making capacity. Petitioner and Ms. Jewel testified that Respondent is frequently paranoid and delusional. Both witnesses expressed concerns regarding his ability to make decisions on his own, referencing his refusal to take his medications. Particularly concerning was the instance where Respondent was described as bleeding so profusely that he was "covered in blood" yet refused to obtain medical attention. Acting this irrationally indicates Respondent lacks the decision-making capacity necessary to act in his own best interest. *See id.* at 335–36.

There is no evidence in the record that preponderates against the trial court's finding that Respondent is a "person with a disability" within the meaning of Tennessee Code Annotated section 34-1-101(14). Respondent lacks the physical and mental capacity necessary to care for himself or make decisions on his own behalf. As a result, Petitioner has proven the requirements of section 34-1-126 by clear and convincing evidence. We further agree that the proof supports the appointment of Respondent's wife as his conservator. As noted by the trial court, Petitioner and Respondent have been married for over 37 years; she has played an active role in helping care for Respondent since his stroke; and she continues to visit with Respondent and use his funds to care for him. Therefore, it cannot be said that the trial court's decision to appoint Petitioner as conservator over Respondent's person and property was an abuse of discretion. *See* Tenn. Code Ann. § 34-3-103 (giving the spouse of the person with a disability priority when appointing a conservator); *In re Conservatorship of Davenport*, 2005 WL 3533299, at *19 (stating a trial court's decision on who to appoint as conservator is reviewed "under the abuse of discretion standard of review"). This decision appears to be necessary and one that is in the best interest of Respondent. *See In re Lawton*, 384 S.W.3d at 761; *Crumley*, 1997 WL 691532, at *2.

## V. CONCLUSION

We affirm the trial court and remand for further proceedings as may be necessary. Costs of this appeal are taxed to appellant, John Martin Muldoon, for which execution may issue if necessary.

_____
CARMA DENNIS MCGEE, JUDGE